On behalf of the athlete, Ms. Anastasia Brooks. Good morning, Your Honors. Good morning. May it please the Court, my name is Kathleen Weck and I represent Margaret Curtis. Your Honors, Ms. Curtis' conviction cannot be sustained. She was charged with failure to provide humane care and treatment for one particular black cat. As much as the record shows, Ms. Curtis was a concerned pet owner who was trying to provide proper care for cat A-209057. There was no evidence of intentional mistreatment of the animal. No evidence she failed to provide food, water, shelter, or veterinary care for the animal. And in fact, she was found not guilty of the charge of failure to provide sufficient veterinary care. There was no evidence that this cat wasn't one of the docile cats kept in a separate bedroom from the feral cats. And when things got out of hand in the house, the evidence showed that Ms. Curtis called animal control to release cats to them. Do we know if this cat, the one that's identified in this record, is actually Baby Boy? The judge seems to have thought it was, but I'm not seeing from the transcript that the dots are actually connected. If there's the inference that it was Baby Boy, maybe it is Baby Boy, but they're not really, in my mind, connecting the dots in the record. Baby Boy is the one that went to the vet in Boone County. Right, and had been treated. At a period not necessarily related to this time, but earlier. Right, but it showed that Baby Boy had been treated, and she has asked if she has a cat named Baby Boy. She said, yes, I do, but nobody ever says, is cat A-209057, Baby Boy? I think we can make the inference that it is, but it's not really spelled out. So, you know, it's the State's duty to prove its case, but this is kind of, it seems that the judge thought it was that cat. So our position is that without any evidence of intentional misconduct, her conviction under this subsection cannot stand. Why does it require intentional conduct? I mean, if the Act requires the caretaker of the animals to provide humane care and treatment, couldn't somebody legitimately make a common-sense argument that by having 87 cats in an apartment, all competing for nutrition, for food, who are ill, is not a humane approach to take? Why can't we look at this from a common-sense standpoint? Well, you know, we do have this one veterinarian for the State saying that no more than five cats should reside in any one residence. But, you know, this is his opinion. It's not clear what happens when you have five cats apparently segregated from the other cats in a place. They have their own litter box in that room. There's no evidence those cats weren't fed. The cat did have an eye infection of some sort. Well, my cat gets an eye infection periodically. I thought the infection had to do with the lungs, not the eye. Upper respiratory, the infection seems to be kind of like a cold. So upper respiratory means sinuses and not the lungs? I don't know. I don't know. I've never heard of euthanizing anybody, let alone cats, for sinusitis. They just seem to think they're all sick and they're going to put them down. You know, this record is pretty insufficient on that standpoint, too. Exactly why were they so sick when they couldn't be rehabilitated? Well, there's not really an issue. I mean, the evidence established is that a number of the cats had upper respiratory infections. Did it not? It did. I mean, they were sick, correct? Mm-hmm. So it isn't the case that she was being prosecuted on some theory. But, in fact, the cats that were in the apartment under her control and care were ill. But, Sam, let me get back into the whole, this subsection D of failure to provide humane care and treatment. You know, this is why I kind of structured the argument this way, because it seemed kind of difficult to do it in reverse. It comes down to, you know, what is failure to provide humane care and treatment? Is this an open, does this give notice to somebody what they must do? Is it, you know, is it vague? Is it open for arbitrary interpretation? Are you challenging the constitutionality also in the statute? Is that what you're also doing? Absolutely. On this case or as applied? Or both? Well, on both. It's applied in this case and on both grounds. I mean, this is just, as the U.S. Supreme Court did say in this city of Akron case, humane is one of these nebulous, slippery terms that is open for interpretation based on different people's predilections. We have, you know, is it humane to declaw a cat or not declaw a cat? Is it humane to leave a dog outside in a heated dog house all the time and never pet it? Some people would say that's an inhumane action. Well, if you're allowing animals within your control to develop illness, sickness, isn't that not acting in a humane manner? I mean, isn't humane a term of ordinary meaning that intelligent people can ascertain? It seems to be one of those terms that is not, you can't really pin it down. Let me ask you this. Okay. We have a disorderly conduct statute going on in Illinois. One of the elements is the person charged has acted in an unreasonable manner. Is unreasonable more specific or is humane more vague than unreasonable? What's an unreasonable action that disturbs and alarms somebody? What's unreasonable? I'm not really sure if that statute has ever been challenged on constitutionality grounds. I should probably look at that case. I imagine because, you know, similarly you could probably charge that and say that's kind of vague. Like what steps must someone do to be in compliance with the statute? But here in this case, Your Honors, we are focused on this humane care and treatment language. Here we have section, I mean, if you don't mind me going into the second part of the argument about constitutionality. Well, let me, before you get to that part, the statute has four subsections. Yes. First being sufficient food and water. Second, shelter. Third, veterinary care. Those would not be included in humane treatment because they're identified. So what's left? It seems to be humane care and treatment is just kind of open-ended for everything else. She has, according to this record, she's a very thoughtful and caring person. If a cat came to her door, she was not going to let it starve. But she also didn't let them out after they came. She took them in, she fed them, and then they stayed. There comes a point at which, and there's no question she didn't feed them properly. There's no question she didn't provide, you know, there weren't holes in the roof, according to the record. And she did take some to the vet. And maybe even this baby boy who may be the A number that's at issue here. It just seems that the issue is not so much it's what she did after she took them in and allowed them to get sick. And that's where it seems to be the problem. And that seems to be the only thing left. It's kind of the catch-all at the end of the specific statutory authority. Your Honor, I might say one thing. It doesn't say she didn't let these cats out. She says when they come to the door, she let them in. I can't bring anything outside the record. We don't know even if she might have had, you know, open basement windows where cats are coming in and out of them. I mean, the record is pretty much silent of where these cats are coming and going into the house, where the places where there's food is potentially also the situation. No one actually said on the record they weren't allowed to leave. Well, can't somebody violate a criminal statute by omission and not necessarily commission? Yes, they can. This case seems remarkably analogous to these other cases that the Illinois Supreme Court has struck down about the parents taking reasonable steps to prevent their children from engaging in sexual activity, the one about, you know, reasonable steps to make sure children are not drinking in the residence and not let them leave in intoxicated states. I mean, here we have the question is she's doing the humane thing in her mind when things are out of hand and she calls animal control to release cats to them. She's doing the humane thing when she owns this one particular cat. We're only really concerned about this one particular cat because that's all she's really charged with failure to provide humane care and treatment for. You know, what is she doing for this cat? She's asking the people to take care of this cat and keep it, you know, it's a particularly special cat to her. I would assume, we don't know, the state didn't show it, but this cat came from the room where the docile cats are, where they have their own litter box, their own source of food. There's no more than five cats in that place. Yes, they had a respiratory infection, which I believe is manifested in eye discharge often, kind of like a cold in the eye, like when upper respiratory you have a cold, your eyes are watery. I think you can just look at me today and see what an upper respiratory infection is. Right, that's what I'm thinking. So what happens when you have an animal that's not responding to your steps to take care of her, well, you call animal control and say, help, I can't handle it anymore. Well, that argument has some intuitive appeal, and I think we can certainly ask the state, if she was being inhumane, why did she relinquish control to animal control? But on a fundamental level, I mean, is it humane to take in more animals when space and resources can properly accommodate? Under your argument, it would be limitless. If she had 500 cats in there climbing all over each other, you seem to be suggesting that would be okay because she didn't do anything other than let them into her place. Is that going to be your – I mean, taken to the absurd, it seems to run contrary to common sense and reason. Well, we could – you could, Your Honor, take it, you know, hypothetically another direction. Say, you know, they're saying no more than five cats in one residence. What if she had six or seven? Is she going to be charged under this statute? Is that inhumane to have six or seven? That's more than the expert for the state thought should be in place. Actually, I think if the statute had been amended or if the statute specified a certain limit, that would be more specific than what we're dealing with here. Yes. But I don't really see the difference between humane, humane being more vague than unreasonable in a statute that has been upheld. Well, humane, the U.S. Supreme Court has noticed, is a particularly difficult word to pin down. So I think their language is worth to consider in this case. You know, and it's similar then to the reasonable steps referenced in Law and Manus when the Supreme Court said, what are these standards to regulate? What constitutes reasonable steps? What are the standards to regulate what constitutes providing humane – failure to provide humane care and treatment for an animal? So you're saying the statute should spell out specific steps that the custodian should take? Yes. Well, it does in Sections A, B, and C. I mean, why doesn't it not just leave it there? I mean, we have other statutes that are applying to intentional cruelty to animals. Why not just leave it with, you know, shelter, food, veterinary care? What's with this open-ended Section D, which is open to arbitrary enforcement? And we're going to slap this lady who's trying to take care of pets with a misdemeanor conviction for the rest of her life based on her trying to do the right thing for animals and what she was trying to reveal. I mean, there's a number of ways you can be inhumane to an animal. I mean, there could be so many different ways. With the statute, you have to spell out every single thing you're supposed to do regarding your pet 24 hours a day? No, but I think it can leave it at just this A, B, and C. I think A, B, and C should be sufficient to provide care for an animal. What do animals need? I mean, when you get into Subsection D, you know, decline, letting your animals get too fat, was that humane? Too many milk bones? A dog? Too much catnip can be inhumane. Right. They're walking around in some kind of stone state all the time. And addictive. Have you looked at statutes in other states regarding the care and treatment of animals? I did, and it seemed like most of them were much more, there's not a lot of them, but they don't have this catch-all category. They seem to be much more specific. Do they define humane in these other statutes? I think I had talked about, no, I've never seen the actual definition of humane that I recall in any of them. You've cited individual facts. I tend to look at this a little bit more holistically. And when I say that, I mean the standard that we're supposed to be applying is with no reasonable or no rational prior effect conclude that your client was guilty. And the facts that you related don't holistically convince me that a rational prior effect would be acting unreasonably if they decided that 87 cats in a two-bedroom dwelling would be deemed to be inhumane. Well, Your Honor, if that's the direction that you would choose to go, then I'd ask you to alternatively consider the constitutionality of the statute, similar to in the Mann S case, when I suppose a rational fact finder could have found the parent in that case who allowed her minor-aged daughter's boyfriend to move into the house, even though she provided that child with birth control, and she thought that she was doing the right thing to take reasonable steps to prevent sexual abuse of her child by giving her child birth control and allowing them to be in the house. But her mere action of letting this boyfriend move in, some would say, sure, a reasonable fact finder could have found she was guilty of permitting the sexual abuse of a child. Yet still, they have held that as an unconstitutionally vague statute because it was not provided by law. As a plier on its face. I suppose it was as – I think it was both. I'd have to look. I think it was as applied. As applied. I kind of think it would be applied. As applied. Because, you know, it's not providing her with standards of what reasonable steps she must take. And that's why I think this is an analogous situation here with the subsection D. If you choose to find that a reasonable fact finder might decide, then you have to ask was this – is the language of the statute opening this up to an arbitrary and discriminatory, in fact, enforcement of this law so that someone with six cats and their cats have upper respiratory infections are not charged under this law, whereas someone with 87 cats has somehow crossed some nebulous line and they're going to get charged with this subsection. You'll have an opportunity. Thank you. May it please the court and counsel, my name is Anastasia Brooks. I represent the people. First of all, it doesn't seem clear from the defendant's brief whether it was a facial or as applied challenge, and now the counsel says that it's both. One thing I also want to point out is it wasn't clear from the defendant's brief that she was challenging or arguing for the inclusion of an intent element to this crime, and for that reason because the defendant failed to make that argument in her brief should be deemed waived on appeal or forfeited. So for that reason, I'm not going to discuss any statutory interpretation issue with respect to whether it's a knowing or intentional mental state or whether it's a strict liability crime unless this court has additional questions. But, of course, I haven't had a chance to research that issue. Setting that aside for the moment, I think the overarching concern of the panel would be why is she making an argument? Tell us why humane is not some vague and ambiguous term. How does a person look at a term humane and immediately know what they are supposed to do to avoid being charged under the statute? So the situation is different. I believe this court had asked a defense counsel about some of the other jurisdictions, and I believe her brief cited Georgia and Virginia as two of the statutes that do actually include a definition of what it means to be humane. However, in this case, there are several indications in which this court can draw from the context of the statute, not just relying on dictionary definitions, for example, which is permissible. But when the statute is called Humane Care for Animals Act, and there are several references, including the word humane is used in the euthanize provision, which mentions the word painless in that provision, and the other context dealing with abuse and cruelty and neglect, failing to provide food and water and adequate nutrition and medical care and shelter. For example, all of that can be drawn in along with the dictionary definitions, which the ones that I have found include active endeavors to find and relieve suffering, and especially to prevent it is one of the dictionary definitions which can be adopted. If a person of reasonable intelligence or ordinary intelligence knew what the active endeavor is to do on this, would they be able to discern that definition? Well, this court doesn't have to invalidate the statute facially as the defendant requests if it's capable of eliminating construction. So it's something that this court could adopt as eliminating construction rather than merely invalidating it on its face. What was the sentence that was imposed? Conditional discharge, Your Honor. There was conditions under the conditional discharge, were there not? Yes. Something to do with eliminating the number of cats in her custody? I'm not sure if she was permitted to have any. I don't remember exactly, and I think there was an inspection provision as well to ensure compliance. I don't remember exactly. It may be in the defendant's brief. Would that implicate the trial court's decision that related more to the number of cats as opposed to the treatment of one individual cat? In terms of the sentence? In terms of its findings. Of the trial court's findings. In other words, it found that this was inhumane because of the number of cats as opposed to the failure to seek treatment for this particular cat. Well, the trial court would have been bound by what was charged. Essentially, the number of cats could have constituted circumstantial evidence, but it wasn't the basis of the case. The case was brought only on the one cat. And unless specifically the defendant knew that cat number A209057 was ill, what were the allegations relating to that specific black cat? Do you recall? You mean what was in the charge itself? The charging document. I don't remember exactly what the charging was. The knowingly and unlawfully failing to provide sufficient veterinary care was one of the counts, which was not guilty. And count two, by knowingly and unlawfully failing to provide humane care and treatment. So the charge itself doesn't elucidate exactly what, but she never complains in the trial court as far as I can remember in the record. You're saying that there was no bill of particulars filed? I don't remember, Your Honor. Or a motion for a bill? If there's no complaint about the sufficiency of the charge or a bill of particulars filed, then the defendant isn't complaining about the inability to present a defense, for example, or to understand exactly what she was being charged with. I measure the record. One thing to answer the previous question is the court, according to Defense Brief, told Mrs. Curtis or Ms. Curtis that she was not to own any companion animals subject to monthly search. I assume companion animal means one of the same species or two of the same species. I believe there's a statutory definition, which I don't have in front of me at this time. It doesn't relate to civil unions, does it? No, I don't think so. I believe cats would probably come under the definition of companion animal in the statute. Meaning that she could have one cat and one dog, but not two cats or two dogs. Any companion animals would probably mean none, is my understanding of the word. Say that again? Would it be none? It says not to own any. Oh, a companion animal under the definition is an animal that is your companion? I believe that refers to the owner of the pet. Why would you have a pet that wasn't a companion? Isn't that an oxymoron? I'm not sure, but there's a legislature's use of the term. I believe there's a definition, which I don't have in front of me, which I think in my best recollection includes a cat, so that she was not to own any under the statute. So a gecko is okay, but a cat isn't? Your Honor, I don't know. It's in the eyes of the beholder. I'm not sure if a pet gecko would qualify under the statute. Well, you might get a break in your insurance, but... We'll reserve that for another case. I understand. Counsel, let me ask you this question. Isn't your position that the statute can be violated by one taking in more animals than their space and resources can properly accommodate? Is that sort of what you're saying here? Well, what the state's brief lays out is the failure to provide a healthy living environment which causes preventable and unnecessary suffering. In this case, the failure to provide a healthy living environment was due primarily to the number of cats, correct? Because of the number of cats was the state's theory. That because of the ability for feline upper respiratory infection, or URI, to be passed from cat to cat, making it impossible or improbable for them to ever recover was part of the testimony. So the limitation was five per quote residence, and then the argument was by the defense is that, well, if they're segregated in one room, and there's no showing here that there was actual segregation because it's an inference that this cat did develop the feline URI, so maybe there had been some contact, could be inferred. The other thing is that there's no testimony showing that segregation would have been sufficient in order to humanely prevent this sort of development of this illness. So for that reason, the statute is charged beyond reasonable doubt. But this illness could have passed if she only had two cats. It could have passed just from one cat to the other as well. Yes, Your Honor, but if that situation, it could have been more effectively treated and controlled, whereas the situation where the testimony, because we have to go with what was in the record and what was in the evidence, and the evidence was if there's more than five, it becomes too hard to manage because of the highly contagious nature of the illness. So, yes, it could have been communicated between just two animals, but then it would be a much more manageable situation. They could be isolated much more efficiently and then both be treated with antibiotics. So for the reasons I'm going to argue, the phrase humanic care and treatment is not so open to interpretation as to provide no standard at all, which would be the standard for the facial challenge. And because of the dictionary definitions and legislative purpose, unlike, I think it was the Manus case, where they couldn't meet a legislative purpose with respect to the reasonable steps to prevent sex assault, or the problem in the law case preventing intoxicated persons from leaving a gathering, it was a situation there in which the person was basically commanded to commit a crime either way. If you have unlawful restraint or allow the person to leave, either way you're committing a crime. And it's kind of an unfair situation to put someone in. Here it's not required for the defendant to commit a crime in order to provide human care and treatment for the one companion animal that was at issue here. So the scope of the duty can be limited enough so that to have fair notice of what is required and also to prevent any arbitrary enforcement by either prosecutors, judges, or juries. Was there evidence at trial that the defendant specifically knew that the cat in question was ill? Any acknowledgment by her anywhere in the record in the evidence? Do you know? I don't know, but it probably could be inferred from the testimony was that there was discharge. So if unusual discharge would be an indication of this illness, and if the defendant was not aware of this particular cat because of, for example, several days went by or more in which she never had any contact with that cat, then it could be also argued a failure to provide care and treatment from the neglect of not ensuring the animal's continuing well-being. Why did she call animal control? What does the record show in that regard? It doesn't say exactly why she decided to call, although it could be argued that just merely calling animal control is not going to cure all prior violations in this act. It's not like assembling a trump card defense that she can say, well, it doesn't matter what I did before. Now I'm acting humanely. So just because the violation could have occurred before she had made the decision to call animal control. You're saying, you know, logically it doesn't exonerate her. I suppose you're turning it around and making the inference that if at some point you call animal control, you know the situation is in fact tolerable, or you probably wouldn't have called them. That's true. That could be an inference with respect to her mental state that could be made. So also another element of the statute which can be brought in to bear on the question of what it means to be humane is the definition of a companion animal hoarder, which refers to the phrase severely overcrowded environment, and all this is in the statute. So there are extra indications. It's not like the Akron case which dealt with fetal remains, something that cannot suffer because it's dead. So the definitions of humane, dealing with compassion for suffering, is not going to apply in that situation, which is why the Supreme Court of the United States has struggled with that definition in that particular context. However, the CB case cited in the state's brief did not have a similar problem and found that the word humane there could be defined with respect to demonstrating compassion. That dealt with an exception for what is permitted to act in self-defense, I think, against an animal. So self-defense there was only permitted as long as one did so in a manner that was humane, demonstrating compassion for the animal. So for that reason, the constitutionality should be upheld. It's presumed constitutional. The defendant has not met that burden either facially or as applied. And this seems like when the defendant wants extra specificity in the statute to describe exactly in minor detail what is required of animal owners. The law doesn't require impossible levels of specificity. And in this word here, in this context, with respect to dictionary definitions, does give reasonable persons of ordinary intelligence fair notice. And so with respect to the sufficient evidence, as I think I've already said, she caused preventable suffering. The animal eventually had to be euthanized. I think they said it was kept in isolation. I'm not sure if the record said that they tried to treat it with antibiotics. At least inferences could be made that if the decision to euthanize was made, that it was made for the reason of the animal being suffering at that point. So for those reasons, the evidence was sufficient and the judgment should be affirmed. And if this Court has no further questions, I'd like to thank you for your time and request this Court to affirm. Thank you, Your Honor. Thank you. Ms. Quirk. Your Honor, I was just talking about the other statutes, which Georgia and Virginia were two that I had cited in the brief. To point out that in the Georgia Code, they don't really define the term humane. They talk about humane care means that it's not limited to provision of adequate heat, ventilation, sanitary, shelter, and wholesome, and adequate food and water. That is already covered with Sections A, B, and C in our statute. The Virginia Code defines humane as any action taken in consideration of and with the intent to provide the animal's health and well-being. Well, here, she's doing the humane thing when she's keeping this cat, which we can really infer does not have contact with the other cats because the state hasn't proven it wasn't one of these docile cats in the bedroom, which would be pretty beat up by feral cats, I would think, and there would be some evidence of that on the record if that had been the case, if it had contact. So she's doing the humane thing for this cat, keeping it segregated. It has its own place. She takes it to the vet. If it is, in fact, baby boy, which the state did not prove it wasn't. It seems to suggest it was. And, in fact, then she did the humane thing by calling animal control and releasing the animals to them and asking them to take particular care of this cat, which was very special to her. And I just find it rather ironic that this one that she seems to be wanting to take particular care of is the one she's charged with failure to provide humane care and treatment for. The state's position appears to be that the calling of animal control may have been a good idea, but it was too little too late and, therefore, can't really be considered as humane treatment. Do you have a specific response to that argument? Well, I guess the question becomes, at one point in the past, would we say when the sixth cat came into that house was that when she was supposedly in violation of this subsection D? I mean, this kind of, like, circles back into the whole vagueness of the section. And, in fact, she was not charged with doing anything specifically. It's just this open-ended failure to provide humane care and treatment. So, I mean, she's taking it to the vet. She's getting to it. So I guess the question is, at what point, and what has she done, really, just by the mere fact these other cats are all in the house, is almost like a red herring because, yes, the cat is sick. Yes, it's being taken to the vet. Yes, it's a docile cat. We don't know that it's having contact with these other cats. But what about, well, I mean, 87 cats in a two-bedroom townhouse, and you can't, common sense doesn't tell us they're having contact with each other? Not if the door is closed. I mean, I would think it would get, if these other cats sound pretty feral, they're hanging from clothes in the closet and trying to get under the mattresses, it sounds like kind of a crazed scene. I would think they'd all be fighting and beating each other up. What about the bottom-line argument? How do you respond to the final argument? The defender failed to protect the cat in question from a disease that would have been preventable and treatable if she didn't allow 80 stray cats into her apartment. We don't, Your Honor, respectfully, we do not know that this cat would not have gotten sick, no matter how many cats were in that place. There have been no other cats in that place. There's been one other cat in the place. But the problem is we know that the cat was sick. We do. And that's, we have to deal with the facts that we have and look at this statutory authority as it applied to these facts. But then we get into the veterinary care, and then, you know, I'm trying to take care of my cat, and he keeps getting a runny eye. He just keeps doing that. I mean, I'm trying to take reasonable steps to provide humane care and treatment by taking him back to the vet, getting him his rabies shots every three years, getting him his eye drops. He keeps getting them back. So am I not providing humane care and treatment for my cat because I cannot stop this from happening to him? I don't know. Your Honor, I just ask that you vacate Curtis's conviction of this offense. Thank you. Thank you. The case will be taken under advisement.